UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

EVELYN MILLER,                                                                                 Plaintiff,

v.                                                Civil Action No. 3:16-cv-621-DJH-DW

CALIBER HOME LOANS, INC., and
SUNTRUST MORTGAGE, INC.,                                             Defendants.

\* \* \* \* \*

## MEMORANDUM OPINION AND ORDER

This action arises from events following Plaintiff Evelyn Miller's default on her home-mortgage loan. Miller sued the original servicer of the loan, Defendant SunTrust Mortgage, alleging violations of federal and state law related to SunTrust's initiation of foreclosure proceedings. (Docket No. 1) Miller also sued Defendant Caliber Home Loans, the current servicer of the loan, alleging that Caliber failed to evaluate potential alternatives to foreclosure. (*Id.*) Caliber has moved to dismiss Count X of Miller's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (D.N. 10) SunTrust seeks dismissal of all claims against it. (D.N. 11) For the reasons set forth below, the Court will grant both motions.

### I.     Background

In 2008, Miller obtained a home-mortgage loan from SunTrust to purchase a home in Louisville, Kentucky. (D.N. 1, PageID # 3) In 2013, Miller fell behind on her monthly payments to SunTrust and defaulted on the loan. (*Id.*) She applied for and received public assistance in the form of an Unemployment Bridge Loan, which made payments to SunTrust from January to September 2014. (*Id.*; *see also* D.N. 16, PageID # 218)

The sequence of events that followed is central to Miller's claims against SunTrust. In September 2014, Miller applied to SunTrust for loss mitigation, a foreclosure alternative

commonly offered by loan servicers. (D.N. 1, PageID # 3) Miller heard nothing from SunTrust until November 3, 2014, when she received a letter informing her that she was in default and that SunTrust was accelerating her debt. (*Id.*) On November 7, 2014, SunTrust initiated foreclosure proceedings against Miller in Jefferson County, Kentucky Circuit Court. *SunTrust Mortg., Inc. v. Evelyn Miller, et al.*, Case No. 14-CI-402183. (*Id.*) Finally, on November 14, 2014, SunTrust provided Miller notice that her loss-mitigation application had been denied. (*Id.*)

Miller reapplied for loss mitigation with SunTrust in December 2014; SunTrust denied the application shortly thereafter. (*Id.*, PageID # 4) She appealed the decision, but SunTrust denied the appeal on March 27, 2015. (*Id.*) Miller applied again in April 2015. (*Id.*) SunTrust denied that application in July 2015. (*Id.*) After retaining counsel, Miller reapplied in September 2015. (*Id.*) SunTrust denied this final application in January 2016. (*Id.*, PageID # 5)

In mid-December 2015, Caliber became the new servicer of Miller's loan. (*See* D.N. 11-1, PageID # 189) Once Miller learned that the loan had been transferred to Caliber, Miller initiated loss-mitigation efforts with Caliber, but Miller and Caliber were unable to agree on terms. (D.N. 1, PageID # 6–9)

On January 20, 2016, the Jefferson County Circuit Court dismissed SunTrust's foreclosure action without prejudice for failure to prosecute. (*Id.*, PageID # 5) Miller filed a motion to vacate the dismissal in order to bring counterclaims against SunTrust, but the court denied the motion. (D.N. 16, PageID # 220) The pleadings indicate that no further foreclosure proceedings have been initiated against Miller. (D.N. 16, PageID # 221)

Miller next brought this action against SunTrust and Caliber, alleging violations of federal and state law. Miller asserts six claims against SunTrust: (i) violation of the regulations pertaining to the Real Estate Settlement Procedures Act (RESPA), (ii) negligence, (iii) gross

negligence, (iv) breach of contract, (v) wrongful foreclosure, and (vi) wrongful use of judicial process. (D.N. 1, PageID # 9–11) Additionally, Miller claims that Caliber violated RESPA and the Fair Debt Collection Practices Act (FDCPA) and breached the terms of the loan and mortgage by violating the duty of good faith and fair dealing. (*Id*., PageID # 11–14) SunTrust has moved to dismiss all claims against it. (D.N. 11) Caliber seeks dismissal of the breach-of-contract claim only. (D.N. 10)

## II. Standards

In order to avoid dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. If "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the plaintiff has not shown that she is entitled to relief. *Id*. at 679. The complaint need not contain "detailed factual allegations," but it must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id*. (citing *Twombly*, 550 U.S. at 555). For purposes of a motion to dismiss, "a district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009)). Finally, on a motion to dismiss, any attachments to the pleadings are treated as part of the pleadings. Fed. R. Civ. P. 10(c).

## III. Discussion

**a. Regulation X Claim**

In Count I of her complaint, Miller alleges that SunTrust violated 12 C.F.R. § 1024.41 ("Regulation X" of RESPA). (D.N. 1, PageID # 9) Regulation X is a Consumer Financial Protection Bureau regulation promulgated pursuant to section 1022(b) of the Dodd-Frank Act, 12 U.S.C. § 5512(b), and RESPA, 12 U.S.C. § 2601 *et seq*. The regulation prohibits a loan servicer from foreclosing on a property if the borrower has submitted a complete loss-mitigation application. 12 C.F.R. § 1024.41(g). Specifically, Regulation X provides:

> If a borrower submits a complete loss mitigation application . . . before a servicer has [initiated foreclosure proceedings], a servicer shall not [foreclose] unless: (i) The servicer has sent the borrower a notice . . . that the borrower is not eligible for any loss mitigation option and the appeal process . . . is not applicable, the borrower has not requested an appeal within the applicable time period for requesting an appeal, or the borrower's appeal has been denied . . . .

The regulation further states that "[a] borrower may enforce the provisions of this section pursuant to section 6(f) of RESPA (12 U.S.C. 2605(f))." 12 C.F.R. 1024.41(a).

Miller alleges that because she submitted a loss-mitigation application in September 2014, SunTrust violated Regulation X by (i) initiating foreclosure proceedings prior to sending her notice that her loss-mitigation application had been denied and (ii) initiating foreclosure proceedings before the applicable appeal period had expired. (D.N. 1, PageID # 9) SunTrust does not contest that it initiated foreclosure prior to sending notice and prior to the expiration of the appeal period. (*See* D.N. 11-1) Rather, SunTrust argues that Miller has inadequately pleaded her Regulation X claim. (*Id*.; D.N. 19, PageID # 303)

SunTrust argues that Miller has failed to adequately allege damages resulting from its alleged violation of Regulation X. (*Id*., PageID # 192) A lender's failure to comply with Regulation X allows a borrower to recover any "actual damages . . . as a result of the failure" and

4

"any additional damages," if there is "a pattern or practice of noncompliance" with RESPA. 12 U.S.C. § 2605(f)(1). Thus, in order to maintain her suit, Miller must plead damages—actual, statutory, or both. *See Tsakanikas v. JPMorgan Chase Bank, N.A.*, No. 2:11–CV–888, 2012 WL 6042836, at *2 (S.D. Ohio Dec. 4, 2012). In her complaint, Miller's sole reference to damages stemming from SunTrust's violation of Regulation X is a statement that she suffered "actual damages, including, but not limited to mental and emotional distress, stress and anxiety." (D.N. 1, PageID # 9) She makes no explicit mention of "a pattern or practice of noncompliance."

The Sixth Circuit generally grants leeway to plaintiffs alleging "actual damages" under RESPA. *See Marais v. Chase Home Fin. LLC*, 736 F.3d 711, 712 (6th Cir. 2013) ("[Sixth Circuit caselaw] counsels against dismissal of RESPA claims on the basis of inartfully-pleaded actual damages." (citing *Mellentine v. Ameriquest Mortg. Co.*, 515 F. App'x 419, 424–25 (6th Cir. Feb. 14, 2013); *Houston v. U.S. Bank Home Mortg. Wis. Servicing*, 505 F. App'x 543, 548 (6th Cir. Nov. 20, 2012))). In *Mellentine*, the Sixth Circuit held that the plaintiff's request for "damages in an amount not yet ascertained, to be proven at trial" sufficiently alleged actual damages under RESPA. 515 F. App'x at 425. The Sixth Circuit has also found "nothing in the text of § 2605(f), or in RESPA more broadly, to preclude 'actual damages' from including emotional damages, provided that they are adequately proven." *Houston*, 505 F. App'x at 548.

Despite this authority, district courts in this circuit are split as to the degree of specificity required to adequately plead actual damages under RESPA. *See Ray v. Caliber Home Loans, Inc.*, No. 3:16-cv-364, 2016 WL 6432823, at *6 (S.D. Ohio Oct. 31, 2016) (dismissing the plaintiffs' RESPA claim where the complaint alleged "damages as a result of Caliber's [RESPA violation]"); *Hagan v. Citimortgage, Inc.*, No. 1:15-cv-454, 2016 WL 6275333, at *5 (W.D. Mich. Oct. 27, 2016) (finding that the plaintiff failed to allege actual damages where the

complaint requested "all damages to which [the plaintiff] is entitled to under RESPA, including emotional damages"); *Austerberry v. Wells Fargo Home Mortg.*, No. 15-cv-13297, 2015 WL 8031857, at *7 (E.D. Mich. Dec. 7, 2015) ("Here, Plaintiff made a threadbare claim for 'emotional damages' without any detail as to the symptoms or severity of the emotional distress or how Defendant allegedly caused these damages."); *Szczodrowski v. Specialized Loan Servicing, LLC*, No. 15–10668, 2015 WL 1966887, at *7 (E.D. Mich. May 1, 2015) ("[M]ere 'stress' is not enough to meet the minimum pleading standards under RESPA."); *cf. Askin v. Ocwen Loan Servicing, LLC*, 2:16-cv-325, 2017 WL 4099211, at *6 (S.D. Ohio Sept. 15, 2017) (finding that the plaintiff's request for damages "to be determined at trial" was sufficient under RESPA); *Helm v. Freedom Mortg. Corp.*, No. 15-cv-12394, 2016 WL 7367425, at *2 (E.D. Mich. Dec. 20, 2016) (citing *Marais* and concluding that the plaintiffs could proceed on their RESPA claim by pleading "emotional distress, indignity, and humiliation"); *Bennett v. Bank of Am., N.A.*, 126 F. Supp. 3d 871, 880 (E.D. Ky. 2015) ("Under RESPA, plaintiffs are not required to plead damages with particularity.")

Ultimately, the Court finds that a plaintiff may not proceed with a RESPA claim by merely making a "threadbare claim" for actual damages. *Austerberry*, 2015 WL 8031857 at *7. Although the Sixth Circuit has counseled against dismissal of RESPA claims on the basis of inartfully-pleaded damages, a plaintiff must still plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Mellentine*, 515 F. App'x at 424 (quoting *Iqbal*, 556 U.S. at 678). Here, Miller's allegation of "actual damages" is a bare conclusion with little factual support. *See Rider v. HSBC Mortg. Corp. (USA)*, No. 2:12–cv–925, 2013 WL 992510, *6 (S.D. Ohio Mar. 13, 2013) ("Conclusory allegations of actual damages [under RESPA] are not sufficient."); *see generally Phila. Indem.*

*Ins. Co. v. Youth Alive, Inc.*, 732 F.3d 645, 649 (6th Cir. 2013) ("While a complaint will survive a motion to dismiss if it contains either direct or inferential allegations respecting all material elements necessary for recovery under a viable legal theory . . . legal conclusions masquerading as factual allegations will not suffice." (internal quotations omitted)).

Although Miller's allegation of "emotional damages" is more detailed, it too is insufficient. Even when viewed in a light most favorable to Miller, her complaint does not raise a reasonable inference that she suffered emotional distress as a result of the seven-day gap between SunTrust's filing of foreclosure and providing notice to Miller that her loss-mitigation application had been denied. *See Iqbal*, 556 U.S. at 678. Nor does the complaint raise the reasonable inference that SunTrust's filing of foreclosure prior to the expiration of the appeal period caused Miller emotional distress, particularly given that Miller elected to forgo her right to an appeal four days after receiving notice of the rejection. (D.N. 1, PageID # 3–4) In other words, even if Miller has suffered emotional distress, her complaint does not allege that such damages resulted from SunTrust's violations.

To recover under RESPA, Miller must also allege that her damages were caused by SunTrust's violations. *See* 12 U.S.C. § 2605(f)(1) (stating that an individual may recover actual damages that occur "as a result of" RESPA violations); *Baez v. Specialized Loan Servicing, LLC*, No. 16-17292, 2017 WL 4220292, at *3 (11th Cir. Sept. 22, 2017) ("For actual damages to be 'a result of' a servicer's noncompliance, the plaintiff must present evidence to establish a causal link between the servicer's noncompliance and her damages."). Even when the complaint is viewed most favorably for Miller, it is apparent that any emotional distress stemmed not from SunTrust's RESPA violations but from the initiation of the foreclosure itself and the subsequent denials of her loss-mitigation applications—the latter of which cannot serve as a basis for her

Regulation X claim. A plaintiff may recover for violations of Regulation X only as to her first loss-mitigation application. *See* 12 C.F.R. § 1024.41; *see also Brimm v. Wells Fargo Bank, N.A.*, 688 F. App'x 329, 331 (6th Cir. 2017) (finding that under Regulation X, a lender need only consider a borrower's first loss-mitigation application); *Bertschy-Gallimore v. U.S. Bank Nat'l Ass'n*, No. 1:15–cv–352, 2015 WL 3889260, at *7 (W.D. Mich. June 24, 2015) (dismissing the plaintiff's Regulation X claim because she had filed previous loss-mitigation applications with the lender).

Because Miller has failed to adequately allege causation, she fails to state a viable claim under RESPA. *See Martini v. JPMorgan Chase Bank, N.A.*, 634 F. App'x. 159, 164 (6th Cir. 2015) ("Here, the [plaintiffs] allege damages that are due to their inability to pay their mortgage, not the alleged RESPA violation."); *see also Peck v. Ocwen Loan Servicing, LLC*, No. 14-12105, 2017 WL 4572331, at *4 (E.D. Mich. Oct. 13, 2017) (holding that the plaintiffs were not entitled to relief under RESPA where "it was [the] [p]laintiffs' failure to pay their mortgage payments that caused their damages"); *Garrow v. Wells Fargo Bank, N.A.*, No. 1:15-cv-1277, 2016 WL 1637441, at *3 (W.D. Mich. April 26, 2016) ("Plaintiffs have failed, however, to make a sufficient showing that the alleged violations—rather than the failure to make the required payments—were the true cause of Plaintiffs' damages."); *Sutters v. U.S. Bank, N.A.*, No. 14–13567, 2015 WL 4104846, *17 (E.D. Mich. July 8, 2015) (finding that even in light of *Mellentine*, the plaintiff could not proceed on his RESPA claim where he alleged no causal link between the alleged RESPA violation and the alleged damages); *Cf. Goss v. CitiMortgage, Inc.*, No. 16-14391, 2017 WL 5499400, at *10 (E.D. Mich. Nov. 16, 2017) (finding that the plaintiff had sufficiently alleged damages where he claimed that the defendant's alleged RESPA violations "caused his foreclosure, caused him to incur a higher interest rate on the equipment he

purchases for his business, and caused him to be denied a business loan"); *Bennett,* 126 F. Supp. 3d at 880 (E.D. Ky. 2015) (finding that the plaintiffs had adequately pleaded damages under RESPA where they claimed that the defendants' alleged RESPA violations "hindered their ability to evaluate their past and present loss mitigation options based on the actual investor guidelines"). Unlike in *Bennett*, Miller has not adequately linked her claim of emotional distress to SunTrust's alleged failure to send her notice.

Miller likewise cannot proceed on Count I as to the statutory damages she seeks. To recover such damages, Miller must allege that SunTrust had a "pattern or practice of noncompliance" with Regulation X. *See* 12 U.S.C. § 2605(f)(1). Some courts have held that for purposes of alleged RESPA violations, "a pattern or practice of noncompliance" requires a lender's noncompliance as to multiple borrowers. *See Toone v. Wells Fargo Bank, N.A.*, 716 F.3d 516, 523 (10th Cir. 2013). Miller does not allege that SunTrust has violated Regulation X as to multiple borrowers. (*See* D.N. 1) Even if Miller could seek statutory damages pursuant to "a pattern or practice of noncompliance" as to just herself, she has failed to allege multiple violations of Regulation X by SunTrust. Again, a plaintiff may recover for violations of Regulation X only as to her first loss-mitigation application. *See* 12 C.F.R. § 1024.41. Thus, even though Miller cites multiple applications for loss mitigation in her complaint, only her first application may serve as a basis for liability under Regulation X. Accordingly, even when viewed in the light most favorable to Miller, her complaint alleges a single violation of Regulation X. The Court therefore finds that Miller has failed to adequately plead "a pattern or practice of noncompliance," and thus she cannot maintain her claim for statutory damages under 12 U.S.C. § 2605(f).

For the reasons stated above, the Court will dismiss Count I of Miller's complaint.

**b. Negligence/Gross Negligence**

In Counts II and III of her complaint, Miller claims that SunTrust was negligent or grossly negligent for failing to consider her supplemental benefits income when it denied her applications for loss mitigation. (D.N. 1, PageID # 9–10) Specifically, she maintains that SunTrust breached a duty of care established under Sections 4.2 and 5.1.4 of the Home Affordable Modification Program (HAMP), which state that loan servicers are required to consider benefits income as part of a borrower's income when determining whether to grant a loan modification. *See* MAKING HOME AFFORDABLE (May 26, 2016), *available at https://www.hmpadmin.com/portal/programs/docs/hamp_servicer/mhahandbook_51.pdf* (last accessed February 14, 2018).

As SunTrust correctly notes, however, "HAMP and its enabling act do not contain a [private] right of action." (D.N. 11-1, PageID # 194 (citing *Bennett, N.A.*, 126 F. Supp. 3d at 882)) Accordingly, SunTrust argues that Miller cannot base her state-law negligence claims on an alleged HAMP violation. (*Id.*, PageID # 194) To rebut this contention, Miller relies on *Mik v. Federal Home Loan Mortgage Corp.*, 743 F.3d 149 (6th Cir. 2014). In *Mik*, the Sixth Circuit concluded that "the absence of a private right of action from a federal statute provides no reason to dismiss a claim under state law just because it refers to or incorporates some element of the federal law." *Id.* at 149 (quoting *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 581 (7th Cir. 2012)). This conclusion alone, however, does not require a finding in favor of Miller. District courts have noted that *Mik* concerned the Protecting Tenants at Foreclosure Act rather than HAMP and thus cannot serve as a basis for recognizing negligence claims under HAMP where there is no applicable state authority recognizing such an action. *See, e.g.*, *Campbell v. Nationstar Mortg.*, No. 14–cv–10645, 2014 WL 3808934, at *5 (E.D. Mich. May 19, 2014).

Indeed, the Sixth Circuit affirmed *Campbell* and has implicitly recognized that *Mik* does not answer the specific question of whether the absence of a private right of action under HAMP bars state law claims based on a HAMP violation. 611 F. App'x 288, 299 (6th Cir. May 6, 2015) ("As the district court correctly observed, Michigan courts have not recognized that such a duty exists under HAMP. Its decision accords with the decisions of other Michigan federal district courts that have declined to find a duty exists under Michigan law."); *see also Ray v. U.S. Bank Nat. Ass'n*, 627 F. App'x 452, 456 (6th Cir. Sept. 28, 2015) ("[T]his court recently ruled in *Campbell* as well as in *Rush v. Freddie Mac*, 792 F.3d 600 (6th Cir. 2015) . . . that the HAMP regulations do not impose a duty of care, an essential element of any negligence claim, on servicers to borrowers under Michigan law.").

Unlike the Michigan law at issue in *Campbell*, the Court is aware of no Kentucky caselaw specifically addressing whether a plaintiff may maintain a state-law negligence claim based on a HAMP violation, and the parties have cited none. However, the Kentucky Supreme Court has held that Kentucky's codification of the common-law doctrine of negligence per se (*see* Ky. Rev. Stat. § 446.070) does not extend to federal statutes and regulations or local ordinances. *T & M Jewelry, Inc. v. Hicks ex rel. Hicks*, 189 S.W.3d 526, 530 (Ky. 2006); *see also McCarty v. Covol Fuels No. 2, LLC*, 978 F. Supp. 2d 799, 808 (W.D. Ky. 2013) (citing *T & M Jewelry, Inc.*, 189 S.W.3d at 530) (finding that under Ky. Rev. Stat. § 446.070, a plaintiff could not base his negligence claim on violations of federal mining regulations).

Miller fails to show that her negligence action arises from a source created separately from and independently of a federal statute or regulation. Indeed, the complaint is clear that Miller bases her negligence claims on HAMP violations (*See* D.N. 1), which is negligence *per se*. *See Real Estate Mktg., Inc. v. Franz*, 885 S.W.2d 921, 926–27 (Ky. 1994) ("[Negligence per

11

se] is merely a negligence claim with a statutory standard of care substituted for the common law standard of care."). Thus, in light of how Kentucky has construed its negligence per se statute, and in the absence of Kentucky caselaw recognizing negligence claims under HAMP, the Court finds that Miller cannot base her negligence claims on HAMP violations. *See Ray*, 627 F. App'x at 456. The Court will therefore dismiss Counts II and III of Miller's complaint.

### c. Breach of Contract

In Counts IV and X of her complaint, Miller brings breach-of-contract claims against Caliber and SunTrust based upon alleged violations of the duty of good faith and fair dealing. (D.N. 1, PageID # 10, 14) Both Caliber and SunTrust have moved to dismiss Miller's breach-of-contract claims. (D.N. 10; D.N. 11) The defendants argue that any alleged breach is excused because Miller breached the loan and mortgage first by defaulting. (D.N. 10-1, PageID # 179; D.N. 11-1, PageID # 193–94) Alternatively, the defendants argue that these claims are deficient because Miller fails to identify which contractual duties the defendants allegedly breached. (D.N. 10-1, PageID # 180–81; D.N. 11-1, PageID # 193)

In support of their arguments, the defendants cite *Bennett v. Bank of America, N.A.*, 126 F. Supp. 3d 871 (E.D. Ky. 2015). There, the plaintiffs brought suit against several loan servicers, alleging that they had been wrongfully denied loss-mitigation options after defaulting on their mortgage loan payments. *Id*. at 876. Among other claims, the plaintiffs alleged that one of the defendants had breached the mortgage contract "by violating their duty to send the [plaintiffs] written notice of default, acceleration, and fees imposed on the loan." *Id*. at 881. The court dismissed the claim on several grounds. First, the court found that the defendant was "excused from any possible breach because the [plaintiffs] breached the mortgage contract first by defaulting on the loan." *Id*. (citing *O'Bryan v. Mengel Co.*, 6 S.W.2d 249, 251 (Ky. 1928)).

Second, the court observed that the plaintiffs had failed to point to any particular provision that the defendant had breached: "Because the mortgage[] contained no loan modification provisions, [the defendant] could not have breached the mortgage by failing to evaluate the [plaintiffs] for a loan modification." *Id.* (citing *Strong v. Louisville & Nashville R. Co.*, 43 S.W.2d 11, 13 (Ky. 1931)). The court also noted that while Kentucky law recognizes an obligation of good faith and fair dealing in performing a contract, "Kentucky law does not provide a cause of action for a breach of good faith and fair dealing outside the insurance context." *Id.* (citing *Davidson v. Am. Freightways, Inc.*, 25 S.W.3d 94, 102 (Ky. 1991)); *see also Ennes v. H & R Block E. Tax Servs., Inc.*, No. 3:01CV–447–H, 2002 WL 226345, at *4 (W.D. Ky. Jan. 11, 2002) ("[D]espite obvious opportunities to do so, Kentucky courts have not extended the tort action for breach of the covenant of good faith and fair dealing to non-insurance contracts.").

The holding in *Bennett* is instructive. Here, by defaulting, Miller breached the mortgage contract before the defendants committed the acts giving rise to her breach-of-contract claims. (*See* D.N. 1, PageID # 3) To the extent that Miller attempts to hold the defendants liable for breach of specific contractual provisions, then, she is barred from doing so. *Bennett*, 126 F. Supp. 3d at 881. This conclusion is bolstered by a review of the loan agreements which contain no language entitling Miller to loss mitigation. (*See* D.N. 1-1)

To the extent that Miller attempts to hold the defendants liable for breaching the implied duty of good faith and fair dealing, her claims likewise fail. Kentucky courts have noted that the implied covenant of good faith and fair dealing merely "impose[s] on the parties . . . a duty to do everything necessary to carry" out the contract. *de Jong v. Leitchfield Deposit Bank*, 254 S.W.3d 817, 823 (Ky. Ct. App. 2007). Thus, while Miller "needn't show that [the defendants] breached any specific provision of the Loan Agreement[] to succeed under an implied duty of good faith

13

and fair dealing theory," she "must show that [the defendants] acted in bad faith in denying [her] the benefits intended by the Loan Agreement[]." *KSA Enters., Inc. v. Branch Banking & Tr. Co.*, No. 5:14-CV-00182, 2015 WL 5611655, at *3 (W.D. Ky. Sept. 23, 2015) (internal citations and quotations omitted). In other words, Miller "must point to some action (or inaction) on [the defendants'] part that kept [her] from reaping the fruits of [her] bargain or otherwise exercising [her] contractual rights." *Id*.

In order to meet this burden, Miller relies on *Bank of America, N.A. v. Corporex Realty & Investment, LLC*, 875 F. Supp. 2d 689 (E.D. Ky. 2012). This reliance is misplaced, however. In *Corporex*, the court held that dismissal of the defendants' counterclaim for breach of the implied duty of good faith and fair dealing was not warranted. *Id*. at 700. But *Corporex* is distinguishable from this case. (*See* D.N. 18, PageID # 298–300) In *Corporex*, the sufficiency of the defendants' counterclaim stemmed from the fact that the alleged bad-faith conduct interfered with the plaintiff's ability to perform the contract and exercise specific contractual rights under the contract. *Id*. Notably, Miller has not alleged that the defendants' actions prevented her from performing the contract or exercising specific contractual rights. As set forth in the complaint, Miller had already breached the contract prior to the alleged bad-faith actions, so she cannot claim that the defendants prevented her from performing the contract. (D.N. 1, PageID # 3) And as discussed above, the loan and mortgage documents contain no provisions entitling Miller to loss mitigation. (*See* D.N. 1-1) Thus, the defendants' alleged bad-faith acts, which stem from Miller's loss-mitigation applications, cannot serve as a basis for her breach-of-contract claims. *Cf. Corporex*, 875 F. Supp. 2d at 700.

Accordingly, as to the breach-of-contract claims, Miller has failed to state a claim upon which relief may be granted. *See Iqbal*, 556 U.S. at 678. The Court will therefore dismiss Counts IV and X of Miller's complaint.

**d. Wrongful Foreclosure**

In Count V, Miller alleges that SunTrust is liable for wrongful foreclosure. (D.N. 1, PageID # 11) SunTrust argues that the claim fails because either (i) "wrongful foreclosure" is not recognized under Kentucky law or (ii) the claim, if construed as an equitable claim, fails due to Miller's unclean hands and the doctrine of laches. (D.N. 11-1, PageID # 196–99)

Miller herself admits that she "is not aware of a Kentucky case specifically recognizing the cause of action of wrongful foreclosure." (D.N. 16, PageID # 231) While Miller is right that a dearth of caselaw "is not a controlling reason for refusing [relief]" (*id.*, PageID # 232 (citing *Henkin, Inc. v. Berea Bank & Tr. Co.*, 566 S.W.2d 420, 423 (Ky. Ct. App. 1978))), the claim would be barred here because Miller's cause of action rests solely on the alleged violation of federal statutes. Although Miller claims that SunTrust is liable because it "had not met the conditions precedent to foreclosure under the mortgage contract" or "did not have the right under state or federal law to foreclosure" (D.N. 1, PageID # 11), she ultimately admits that her claim rests on the "existence and breach of . . . two duties owed to her by SunTrust." (D.N. 16, PageID # 232). The duties Miller cites are duties arising under RESPA and HAMP. (*Id.*)

Yet as explained above, Miller cannot pursue state-law negligence claims based on federal statutes or regulations. *See T&M Jewelry, Inc.*, 189 S.W.3d at 530. Alternatively, even if Miller could base her claim on these federal laws, her wrongful-foreclosure claim would still be barred because the Court concludes that Kentucky would not recognize such a claim. *See Rivas v. Doering*, No. CIV.A 3:01-CV-346-H, 2002 WL 1313127, at *3 (W.D. Ky. May 22, 2002)

(finding that in the absence of Kentucky law on a given issue, it is appropriate at times for this Court to predict how Kentucky's highest court would rule). Wrongful foreclosure is a cause of action most often recognized in nonjudicial-foreclosure states. *See* Elizabeth O'Connor Tomlinson, *Proof of Wrongful Mortgage Foreclosure*, 123 AM. JUR. PROOF OF FACTS 3d 417, § 2 (2011). In these jurisdictions, the claim of wrongful foreclosure serves a necessary role to ensure mortgagors are protected when foreclosure occurs without judicial oversight. *Id.* Kentucky, however, is a judicial-foreclosure state, and all foreclosures in the state are subject to court supervision. *See Am. Gen. Home Equity, Inc. v. Kestel*, 253 S.W.3d 543, 554 (Ky. 2008) ("Kentucky is a judicial foreclosure state requiring the filing of a circuit court action to pursue foreclosure as a remedy."). Under these circumstances, the Court finds that Kentucky would not recognize the wrongful-foreclosure claim.

Because the Court concludes that Miller may not assert a cause of action based upon the doctrine of wrongful foreclosure, it need not address SunTrust's equitable defenses. The Court will dismiss Count V of Miller's complaint. *See Iqbal*, 556 U.S. at 678.

**e. Wrongful Use of Judicial Process**

In Count VI of her complaint, Miller alleges that SunTrust is liable for wrongful use of judicial process (i.e., the foreclosure action). (D.N. 1, PageID # 11) Kentucky follows the Restatement (Second) of Torts in analyzing whether a party wrongfully used judicial process. *See Mapother and Mapother, P.S.C. v. Douglas*, 750 S.W.2d 430, 431 (Ky. 1988). The Restatement establishes four elements for the claim: (a) the party must have acted without probable cause, (b) "primarily for the purpose other than that of securing the proper adjudication of the claim in which the proceeding was based," (c) the proceedings must have terminated in favor of the person against whom they are brought, and (d) the party must have been injured as a

result. Restatement (Second) of Torts § 674 (1977); *see also Zimmerman v. CitiMortgage, Inc.*, No. 3:11–CV–00164–JHM, 2012 WL 1067912 (W.D. Ky. Mar. 29, 2012) (applying the *Mapother*/Restatement standard). The Kentucky Supreme Court has held that elements (a) and (b) are separate "both as to their meaning and as to their function." *Prewitt v. Sexton*, 777 S.W.2d 891, 894 (Ky. 1989).

Even when viewed in a light most favorable to Miller, Count VI of her complaint fails to satisfy this standard. First, Miller attempts to satisfy element (b) by simply parroting the applicable legal standard in a conclusory manner. Miller states that "SunTrust did not file its foreclosure for the primary purpose of effecting its proper adjudication." (D.N. 1, PageID # 11) This conclusory allegation will not suffice, however. *See Phila. Indem. Ins. Co.*, 732 F.3d at 649. Miller has failed to state facts that enable the Court to reasonably infer that SunTrust filed its foreclosure action for an improper purpose. *See Iqbal*, 556 U.S. at 678. Furthermore, Miller failed even to allege that element (a) is satisfied (i.e., that SunTrust initiated the foreclosure without probable cause). A review of the pleadings shows that SunTrust had probable cause to file the action after Miller defaulted on her loan. (D.N. 1, PageID # 3)

Because Miller failed to adequately plead two elements of wrongful use of judicial process, she fails to state a claim upon which relief may be granted. The Court will therefore dismiss Count VI of Miller's complaint. *See Iqbal*, 556 U.S. at 678.

**f. Res Judicata Defense**

Because the Court has independent grounds to dismiss all of Miller's claims against SunTrust, it need not address SunTrust's *res judicata* defense.

## IV. Conclusion

For the reasons set forth above, and the Court being otherwise sufficiently advised, it is hereby

**ORDERED** as follows:

(1) Caliber's motion to dismiss Count X of Miller's complaint (D.N. 10) is **GRANTED**.

(2) SunTrust's motion to dismiss (D.N. 11) is **GRANTED**. Miller's claims against SunTrust are **DISMISSED** with prejudice.

(3) The Clerk of Court is **DIRECTED** to terminate SunTrust as a defendant in the record of this matter.

(4) This matter is **REFERRED** to Magistrate Judge Dave Whalin for a status conference.

February 15, 2018

**David J. Hale, Judge**
**United States District Court**